|    |                                    |                                  |
|----|------------------------------------|----------------------------------|
|    | UNITED STATES DISTRICT COURT       |                                  |
|    | CENTRAL DISTRICT OF CALIFORNIA     |                                  |
|    | WESTERN DIVISION                   |                                  |

| TRENTON BOSTOCK, | ) Case No. 2:18-cv-02565-JDE |
|---|---|
| Plaintiff, | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff Trenton Bostock ("Plaintiff") filed a Complaint on March 29, 2018, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). Dkt. 1. Pursuant to the procedures set forth in the Case Management Order, Plaintiff and the Commissioner each filed cross-motions for judgment on the pleadings. Dkt. 15 ("Motion") and Dkt. 16 ("Cross-Motion"), respectively. The matter now is ready for decision.

**I.**

**BACKGROUND**

Plaintiff filed an application for DIB on August 4, 2014, alleging disability commencing on April 12, 2013. Administrative Record ("AR") 257-

60. On September 11, 2014, after his application was denied initially and on reconsideration (AR 148-57), Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 96-147. On December 2, 2016, the ALJ issued a written decision finding Plaintiff was not disabled (AR 32-49), had not engaged in substantial gainful employment since April 12, 2013, and suffered from the following severe impairments: degenerative disc disease, other disorders of the lumbosacral spine, and obesity. AR 37. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work, further limited as follows:

> "[T]he [Plaintiff] can lift and/or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours and sit six hours in an eight-hour day. The [Plaintiff] requires the ability to alternate position from standing and/or walking to sitting, for fifteen minutes, after every two hours of standing or walking. The [Plaintiff] can push and/or pull to the extent that he can lift and/or carry. The [Plaintiff] can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds, stoop kneel and crawl. The [Plaintiff] can have frequent exposure to hazards such as dangerous moving machinery and unprotected heights.

AR 40.

The ALJ found Plaintiff was capable of performing his past relevant work as a Driving Instructor as generally performed. AR 44-45. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act. Id. at 45.

On February 20, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7.

# II.
# LEGAL STANDARDS

## A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where that error is harmless. Id. at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

/ / /

/ / /

## B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or

regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he or she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he or she is disabled, or he or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he or she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

Plaintiff presents one disputed issue: Whether the ALJ properly evaluated Plaintiff's testimony. Motion at 5.

### A. **Plaintiff's Subjective Symptom Testimony**

    1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's

testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin, 359 F.3d 1190, 1197 (9th Cir. 2004).

2. Analysis

Plaintiff testified he injured himself at work while loading and unloading a truck, has "major pain" in his lower lumbar area, and he gets sharp pains in both of his legs, hips, and down to his toes. AR 124, 130-31. Plaintiff reported he can only stand in one place, walk, or sit for about an hour and a half at a time. AR 132-33. Plaintiff testified "the only surgery" he had was a spinal cord stimulator procedure, and stated an orthopedic surgeon told him it was "too risky" to perform other surgical procedures. AR 103. Plaintiff testified that the surgeon did not further explain the underlying risks. Id. Plaintiff also stated taking epidural shots, injections, and blocks did not have any impact on his pain, but the spinal cord stimulator procedure reduced his pain by "about 20 to 30 percent." AR 134.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements "concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the objective medical evidence and other evidence," (AR 43) because the testimony was inconsistent with: (1) the objective evidence in the record and (2) Plaintiff's conservative treatment.

First, the ALJ discounted Plaintiff's testimony because it was not supported by objective medical evidence. AR 28-31. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a

factor that the ALJ can consider in his credibility analysis." <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005); <u>see also</u> <u>Rollins</u>, 261 F.3d at 857. The record shows several objective medical findings and conclusions conflict with Plaintiff's allegations of total disability, including: diagnostic testing, including MRIs and CT myelograms, showing no evidence of nerve root impingement, no evidence of a synovial cyst, no associated high-grade canal or neural foraminal stenosis, and no mention of nerve root involvement at any level. AR 744, 779, 782-83. In light of this evidence, the ALJ properly considered inconsistency with the objective medical evidence as one factor supporting the decision to discount Plaintiff's symptom testimony—so long as this factor was not the only factor supporting the decision. <u>See</u> <u>Burch</u>, 400 F.3d at 681.

Second, the ALJ discounted Plaintiff's testimony because "the treatment record is not consistent with disabling symptoms" and "fails to show evidence of long-term, intractable pain and disuse." AR 44. The ALJ reasoned: (1) although Plaintiff purchased a cane at his doctor's suggestion, there is no indication any ambulatory aides had been prescribed; (2) although Plaintiff has been prescribed narcotic medications, physical therapy, and a nerve stimulation device, there is no evidence surgery had been indicated or strongly suggested; (3) Plaintiff had not been noted to be in acute pain at examinations; (4) there is no record of urgent treatment; (5) there is no evidence of Plaintiff consistently complaining or seeking treatment for bilateral lower extremity numbness; and (6) Plaintiff exaggerated his gait to an Agreed Medical Examiner. AR 44. Thus, the ALJ appears to contend that Plaintiff has only received conservative treatment.

Plaintiff argues his care was not conservative in nature, and the ALJ did not cite any medical evidence demonstrating Plaintiff "had in fact undergone a conservative course of treatment." Motion at 10-11. Plaintiff contends narcotic medications and epidurals do not qualify as conservative treatment. <u>Id.</u> at 11.

Courts have variously characterized steroid epidural injections as both conservative and not conservative depending on other circumstances. Typically, when limited or one-time injections, courts have deemed the treatment conservative. See, e.g., Jones v. Comm'r, 2014 WL 228590, at *7 (E. D. Cal. Jan. 21, 2014) (finding occasional use of epidural injections in conjunction with massages and anti-inflammatory medications could be considered conservative); Veliz v. Colvin, 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (finding a single steroid injection did not undermine ALJ's finding that plaintiff received conservative treatment); Gonzales v. Colvin, 2015 WL 685347, at *11 (C.D. Cal. Feb. 18, 2015) (finding treatment consisting of medication and a single steroid injection was conservative). By contrast, other courts have found such treatment not conservative, in particular when a claimant was treated with other injections and narcotic pain medication. See, e.g., Yang v. Colvin, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases finding spinal epidural injections not conservative); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (not characterizing steroid, trigger point, and epidural injections as conservative).

Similarly, the use of narcotic medication, by itself, may be considered conservative treatment. See Huizar v. Comm'r, 428 F. App'x 678, 680 (9th Cir. 2011) (finding plaintiff responded to conservative treatment, which included use of narcotic medication); Higinio v. Colvin, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (concluding, despite narcotic prescriptions, treatment as a whole was conservative); Grisel v. Colvin, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (finding narcotic pain medication conservative when it provided relief and was not in combination with other treatments such as epidural injections). But, in general, the Ninth Circuit and district courts within this circuit have viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments

8

that were also not conservative. See, e.g., Lapeirre–Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (holding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); Soltero De Rodriguez v. Colvin, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015); Christie, 2011 WL 4368189, at *4 (finding treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative).

Here, Plaintiff's treatment has consisted of: (1) treatment by a pain management specialist, (2) narcotic pain medication to control Plaintiff's pain, (3) physical therapy, (4) acupuncture, (5) chiropractic treatment, (6) multiple lumbar epidural injections, (7) facet injections, and (8) a spinal cord stimulator procedure. AR 813, 376, 377, 379, 570, 610, 659, 663-64, 728-29, 757, 774, 785, 787-91. Ryan C. Peterson, M.D., Plaintiff's treating physician, classified Plaintiff as having gone through "aggressive pain management." AR 813. Plaintiff did not receive only a single injection, and he did not only receive narcotic medications. He received multiple types of injections on several occasions, all of which only provided temporary relief, as well as being prescribed narcotic medications. AR 134, 813. Plaintiff also reported high levels of pain during examinations on multiple occasions. AR 762, 766.

In addition, Plaintiff's doctors considered surgery as a treatment option on several occasions (AR 374, 406-07, 594, 612, 656, 700, 786), and Plaintiff testified his doctor ultimately found surgery to be "too risky." AR 103. The ALJ failed to point to anything in the record suggesting any specific surgical or more aggressive procedure beyond Plaintiff's existing treatment is a standard method for treating individuals with the type of pain recounted by Plaintiff. See Yang, 2015 WL 248056, at *6-7. Plaintiff need not be "utterly incapacitated to be disabled. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Commissioner raises the opinions of Gary Ghazi, M.D. and William

9

Pevsner, D.O. to support the ALJ's finding of conservative treatment, but the ALJ did not raise those opinions to support his finding on that issue. See Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1225 (9th Cir. 2009) ("long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"); see also SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Similarly, although both parties discuss activities of daily living in connection with the analysis of subjective symptom testimony (Motion at 12-13; Cross-Motion at 9-10), as the Commissioner concedes, the ALJ did not rely upon such activities in discrediting Plaintiff's testimony and this Court cannot rely upon a ground not relied upon by the ALJ. Bray, 554 F.3d at 1225.

Considering the record as a whole, the ALJ's finding that plaintiff received conservative treatment was not supported by substantial evidence. See Ruiz v. Berryhill, 2017 WL 4570811, at *5-6 (C.D. Cal. Oct. 11, 2017) (finding plaintiff's treatment was not conservative where he received acupuncture, narcotic pain medication, facet joint injections, epidural injections, physiotherapy, chiropractic care, and aquatic therapy); Yang, 2015 WL 248056, at *6-7 (finding plaintiff's treatment was not conservative where he received treatment by a pain management specialist, narcotic pain medication, physical therapy, acupuncture, electrical stimulation, and chiropractic treatment). Plaintiff's wide range of cumulative treatment, including narcotic pain medication and multiple epidural shots, was not conservative.

In sum, the ALJ finding that Plaintiff's symptom testimony was inconsistent with the objective medical evidence was supported by substantial evidence, but the finding of conservative treatment was not so supported. As inconsistency with the objective medical evidence cannot be the only basis to

discount Plaintiff's subjective symptom testimony, the ALJ erred. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

**B.    Remand is appropriate.**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

Here, remand is required because the ALJ failed to properly consider Plaintiff's subjective symptom testimony. On remand, the ALJ shall reconsider Plaintiff's subjective complaints and either credit his testimony or provide sufficient clear and convincing reasons supported by substantial evidence for rejecting it and conduct such further proceedings as is warranted by such reconsideration.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: November 09, 2018

_____
JOHN D. EARLY
United States Magistrate Judge